# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **MARK WAYNE THIBODEAUX** | : | **DOCKET NO. 2:18-cv-1599** |
| **D.O.C. # 89963** | | **SECTION P** |
| **VERSUS** | : | **CHIEF JUDGE HICKS** |
| **DARREL VANNOY** | : | **MAGISTRATE JUDGE KAY** |

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus [doc. 1] filed by pro se petitioner Mark Wayne Thibodeaux ("petitioner"). The petitioner is an inmate in the custody of the Louisiana Department of Safety and Corrections. The respondent opposes the petition [doc. 14]. The petition is now ripe for review.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636. For reasons stated below, **IT IS RECOMMENDED** that all claims be **DENIED** and **DISMISSED WITH PREJUDICE**.

## I.
### BACKGROUND

### A. Conviction

The petitioner was indicted by a Calcasieu Parish Grand Jury on two counts of second-degree murder and one count of attempted second degree murder, in violation of LSA-R.S. 14:30.1 and LSA-R.S. 14:27/14:30.1, respectively. Doc. 10, att. 4, p. 10. The petitioner's jury trial began on February 11, 2014. *Id*. at pp. 23-25. On February 13, 2014, the petitioner was found guilty as charged. *Id*. at pp. 26-28. On March 12, 2014, the petitioner was sentenced to life imprisonment

-1-

in the custody of the Louisiana Department of Corrections for each conviction of second-degree murder to be served without benefit of probation, parole, or suspension of sentence and with credit given to him for time served.  *Id*. at p. 29.  As to the charge of attempted second degree murder, the petitioner was sentenced to serve 25 years in the custody of the Louisiana Department of Corrections, to be served without benefit of probation, parole or suspension of sentence, and with credit given to him for time served.  *Id*. The sentences were ordered to run concurrently.  *Id*.

### B.  Direct Appeal

Petitioner, through counsel, timely filed a direct appeal in the Louisiana Third Circuit Court of Appeal.  On March 11, 2015, the Third Circuit Court of Appeal remanded the matter for the trial court to rule on the petitioner's pro se motions- a motion to quash the indictment filed April 26, 2013, a motion to suppress filed April 29, 2013, and a motion for speedy trial, filed April 30, 2013, which were never considered by the trial court.  *State v. Thibodeaux*, 14-1002 (La. App. 3 Cir. 03/11/15); 162 So 3d 665.  A hearing was held on July 9, 2015, wherein the trial court denied the petitioner's motions.  Doc. 14, att. 10, pp. 80-150.

The petitioner again appealed to the Third Circuit, filing one brief through counsel and one brief pro se.  His counseled brief raised the following assignments of error: (1) insufficient evidence to support guilty verdicts of second-degree murder; (2) state failed to establish that Thibodeaux intended to kill Joseph Newman; therefore, the state failed to meet its burden of proving he is guilty of attempted second degree murder; (3) trial court erred in failing to hold a hearing and rule on the pro-se motions prior to commencement of trial in this case, to the prejudice of petitioner; and (4) trial court erred in denying the pro-se motion to suppress the identification by Joseph Newman.  Quoting from the Third Circuit's opinion petitioner's pro se assignments read as follows:

1. Denial (insidiously constructive) of the constitutional right to "assistance of counsel"... proceedings of pretrial... trial, 1-9-12 thru [sic] 2-10-14, and evidentiary hearing ... 4-16-15 thru [sic] 7-9-15. Conflict of interest . . .

2. Court erred... and was an [sic] substantial abuse of discretion... in denying defendant's pro se motion to suppress . . . (1) seizure of irrelevant (non-probative value) items (knife, wig) of undue prejudice and unrelative [sic] (no nexus of probative material value) to case matter, and (2) the purporting of inadmissible hearsay (hooded-sweatshirt, cell phone) never verified nor substantiated identity of owner . . . extremely undue prejudice and substantial and injurious effect . . . influential upon the determination of jury's verdict . . . Brecht standard . . . and (3) the court erred in failing to suppress the impermissible suggestive post-indictment identification . . . in light of Joseph Newman['s] usage of crack-cocaine and alcohol . . . state of delirium . . .

3. The court renunciated [sic] and relinguished [sic] its incumbent constitutional duty to comport to fair and impartial procedure . . . denying the defendant's constitutional right of "due process" . . . substantial irreparable injury . . . both pretrial and trial, and evidentiary hearing . . .

4. Court erred in denying defendant's pro se motion to quash indictment . . . inherented [sic] on grounds of insufficiency . . . failing to allege with sufficient clarity . . . unequivocally . . . statement of specific essential elements of material facts of identification constituting the offense charged. And cannot be left to inferences . . . essential facts . . . no indictment can be valid which does not bear the signature of the foreman of the grand jury . . .

5. The evidence was insufficient to the finding of guilty as charge[d], LSA-R.S. 14:30.1, two (2) counts . . .

6. The evidence was insufficient to the finding of guilty as charge[d], LSA-R.S. 14:27/30.1, one (1) count . . .

7. The court has erred and fail[ed] to comply with federal and state constitutions . . . statutory laws . . . and rules of court procedure . . . being in violation of the "confrontation clause" . . .

8. The court has erred and fail[ed] to comply with federal and state constitutions . . . statutory laws . . . and rules of court procedure . . . being in violation of the "Brady rule" . . .

*State v. Thibodeaux*, 2015-723 (La.App. 3 Cir. 4/13/2016), 190 So.3d 426, 428-430.    His convictions were affirmed by the Third Circuit. *Id.*  The Louisiana Supreme Court denied the petitioner's application for supervisory review on April 24, 2017. *State v. Thibodeaux*, 2016-0844 (La. 4/24/17), 220 So.3d 741.

### C.  State Collateral Review

The petitioner filed a pro se application for post-conviction relief in the state district court on May 1, 2017, alleging that he was denied effective assistance of counsel during the pre-trial period, that he was denied due process of law and his conviction was obtained  in violation of the constitution of the United States or the State of Louisiana, that the indictments on his charges and the evidence presented at trial were insufficient to bring the case to trial and obtain a conviction and that the trial court "knowingly impeded the defendant's constitutional right to present a defense" by failing to disclose the testimony of the state's witnesses before the grand jury.  Doc. 14, att. 11, pp. 75-117.  The state district court denied the application on September 15, 2017.  *Id.* at pp. 120-123.   On September 26, 2017, petitioner sought writs in the Third Circuit Court of Appeal.  Doc. 1, att. 4, pp. 52-69.

While the matter was pending before the Third Circuit, petitioner filed a petition for writ of habeas corpus in this Court, on April 5, 2018.  *Thibodeaux v. Vannoy*, No. 18-cv-00483 (W.D. La., April 5, 2018).   He moved to stay the matter pending review by the state court.  *Id.* at doc. 2. On April 29, 2018, the undersigned recommended that the motion to stay be denied and the petition be denied and dismissed without prejudice.   *Id.* at doc. 7.   Judge James adopted the recommendation on June 19, 2018.  *Id.* at doc. 9.

On July 9, 2018, the Third Circuit denied petitioner's supervisory writ application. Doc. 1, att. 4, p. 50. The petitioner then sought a writ of review in the Louisiana Supreme Court, which was denied on December 3, 2018. *State ex. rel Thibodeaux v. State*, 257 So.3d 191 (La. 12/3/18).

### D. Federal Habeas Petition

The instant petition was filed in this court on December 7, 2018. Doc. 1. On December 27, 2018, the undersigned ordered the State of Louisiana to file a response to petitioner's writ of habeas corpus, which it did on May 13, 2019. Doc. 14. Quoting from his "On Appeal…Memorandum-of-Law in Support of Federal Habeas Corpus, § 2254(d)(1)(2); State Court Judgment…" petitioner presents the following issues for review herein:

1. Can the trial court (14th JDC), renunciate its ministerial duty [Constitutional…], and, insidiously advertent circumvent a defendant's "constitutional" right of "assistance of counsel" for his or her defense…at every stage of adversarial proceedings (?) promugated(sic)/and, "guaranteed within the Sixth Amendment, and made incumbent by the Fourteenth Amendment – "due process clause" [?] See e.g., Powell et al v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932) (citing, Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d. 799 (1963)…)…

2. Can the trial court (14th JDC), clandestinely collaborate… with court-appointed counsel, Robert Shelton, to insidiously circumvent the defendant's [constitutional right…] … of "effective assistance of counsel"…deliberate dereliction/missions… see e.g. U.S. v. Chronic, 466 U.S. 638, 104 S.Ct. 2039, 80 L.Ed.2d. 657 (1984) (citing Jones v. Jones, 988 F.Supp. 1000 (E.D. La. 1997); quoting, Tower v. Glover, 467 U.S. 914, 919-20, 81 L.Ed.2d. 758, 104 S.Ct. 2820 (1984)…)…

3. Can the trial court (14th JDC), relinquish and abdicate its ministerial [constitutional duty]…inter alia… judicial stratagem [clandestine…]… of prosecutorial improprieties…subversively to circumvent the defendant's "constitutional" right of "due process of the law"…substantial irreparable injury- impairing the constitutional right to present a defense - - pre-trial…trial…evid.hrg.[?] U.S.C.A. 5, 14…

4. Did the trial court (14th JDC), substantially err…in denying defendant's pro se motion to quash indictment, on remand [?] in that, it was ambiguous and inherent on grounds of insufficiency…failure to allege with clarity…a statement of specificity…essential elements of material

facts of identity constituting the offense.  See e.g., Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962) (citing U.S. v. Jenkins, 675 F.Supp.2d. 647 (W.D. Va. 2009)…)…

5. Was it of substantial constitutional err…of prosecutorial misconduct…and, abuse of discretion…absent, plenary [hearing…] review prior commence of trial…(1) allowing irrelevant seized items [knife, wig - - non-probative value…] and, unrelative [no nexus of probative value…] to case matter, and, misrepresented…to the prejudice of the defendant (2) the purporting of impermissible hearsay [hooded-sweatshirt, cell-phone/no…]… uncorroborative (sic) of any essential element of identity of an owner, and "never" being introduced upon the merits of trial.  See e.g., U.S. v. Maddox, 156 F.3d 1280 (D.C. Cir. 1998) (citing, Brown v. Borg, 951 F.2d 1011 (C.A. 9(Cal.) 1991)…)… undue prjduice and substantial and injurious effect…influential upon the determination of the jury's verdict - - Brecht Standard… See e.g., Brecht v. Abrahamson, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d. 353 (1993); Miller v. Pate, 386 U.S. 1, 17 L.Ed.2d. 690, 87 S.Ct. 783 (1967); Dawson v. Delaware, 503 U.S. 159, 165, 112 S.Ct. 1093, 117 L.Ed.2d 309 (1992) (citing Taylor v. Cain, 545 F.3d 327 (C.A. La. 5(LA.) 2008); Wood v. Ercole, 644 F.3d 83, 99 (2nd Cir. 2011)…)…

6. Was it substantive constitutional err…and, arbitrary abuse of discretion, by the trial court (14th JDC), failure to suppress the impermissible suggestive post-indictment [mis] identification…in light of allege-victim's (Joseph Newman) under the influence (intoxication…)… of crack-cocaine and alcohol…state of delirium…at the time of the impremissible (sic) suggestive [mis-] identification (?) See e.g., Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d. 140 (1977) (citing Nelson v. Brown, 673 F.Supp.2d. 85 (E.D. N.Y. 2009)…)…

7. Was there evidentiary sufficiency…to the trial court (14th JDC) finding of guilty as charged, LSA-R.S. 14:30.1, two (2) counts, absent, any direct nexus of evidence/eye-witness? In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (U.S.N.Y. 1970) (citing Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d. 560 (1979)…)…

8. Was there evidentiary sufficiency…to the trial court (14th JDC) finding of guilty as charged, LSA-R.S. 14:27/30.1, one (1) count, absent, any direct evidence…nexus to the defendant, and, in light of the record…merely establishes a use of force/or, violence as required for a battery, LSA-R.S. 14:34, absent the showing of intent to cause death. Id.

9. Was it a substantive [constitutional…] unreasonable application of…and, contrary to…established [U.S. Sup.Ct.]…precedents, allowing

impermissible out-of-court statements and [knowingly] impermissible incitement of perjurious testimonies of state's witnesses (Det. Fondel, Denise Ledoux, Jason Thibodeaux), vilative (sic) of the "confrontation clause" and "due process clause" – of prosecutorial misconduct(?) See e.g., Berger v. United States, 295 U.S. 78, 88, 79 L.Ed. 1314, 55 S.Ct. 629 (1935) (citing, Napue v. People of the State of Illinois, 360 U.S. 264, 3 L.Ed.2d 1217, 79 S.Ct. 1173 (1959); Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d. 177 (U.S. Wash. 2004)…)…

10. Did the trial court (14th JDC), substantive (constitutional…) failure to accord and comply with established (federal) jurisprudence and precedents, pursuant to upon request- - pro se motion for supplemental discovery, LSA-C.Cr.P.Arts. 716-718; e.g., exhibit "EE"' copies of testimonies of state's witnesses before the grand jury, and, criminal histories of state's witnesses… the materiality of imopeachment (sic), interests, and, bias, in the case mater, violative of the "Brady Rule" and "Due Process Clause" ? See e.g., Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d. 215 (1963); Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d. 104 (1972); United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 155, 131 L.Ed.2d. 490 (1985)…)…

## II.
### LAW & ANALYSIS

### A. Timeliness

Federal law imposes a one-year limitation period within which persons who are in custody pursuant to the judgment of a state court may seek habeas review in federal court. 28 U.S.C. § 2244(d)(1). This period generally runs from the date that the conviction becomes final. *Id.* The time during which a properly-filed application for post-conviction relief is pending in state court is not counted toward the one-year limit. *Id.* at § 2244(d)(2); *Ott v. Johnson*, 192 F.3d 510, 512 (5th Cir. 1999). However, any lapse of time before proper filing in state court *is* counted. *Flanagan v. Johnson*, 154 F.3d 196, 199 n. 1 (5th Cir. 1998).

A state application is considered pending both while it is in state court for review and also during intervals between a state court's disposition and the petitioner's timely filing for review at the next level of state consideration. *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001). The limitations period is not tolled, however, for the period between the completion of state review and

the filing of the federal habeas application. *Rhines v. Weber*, 125 S.Ct. 1528 (2005). Accordingly, in order to determine whether a habeas petition is time-barred under the provisions of §2244(d) the court must ascertain: (1) the date upon which the judgment became final either by the conclusion of direct review or by the expiration of time for seeking further direct review, (2) the dates during which properly filed petitions for post-conviction or other collateral review were pending in the state courts, and (3) the date upon which the petitioner filed his federal habeas corpus petition.

## B. Exhaustion and Procedural Default

Exhaustion and procedural default are both affirmative defenses that may be considered waived if not asserted in the respondent's responsive pleadings. *E.g.*, *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994). However, the federal district court may also consider both doctrines on its own motion. *Magouirk v. Phillips*, 144 F.3d 348, 357–59 (5th Cir. 1998). Therefore we consider any assertions by respondent under these doctrines, in addition to conducting our own review.

### 1. Exhaustion of State Court Remedies

The federal habeas corpus statute and decades of federal jurisprudence require that a petitioner seeking federal habeas corpus relief exhaust all available state court remedies before filing his federal petition. 28 U.S.C. § 2254(b)(1); *e.g.*, *Whitehead v. Johnson,* 157 F.3d 384, 387 (5th Cir. 1998). This is a matter of comity. *Ex parte Royall*, 6 S.Ct. 734, 740–41 (1886). In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of his federal constitutional claims to the state courts "in a procedurally proper manner according to the rules of the state courts." *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001); *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988). Each claim must be presented to the state's highest court, even when review by that court is discretionary. *Wilson v. Foti*, 832 F.2d 891, 893–94 (5th Cir.

1987). The exhaustion requirement is not satisfied if the petitioner presents new legal theories or entirely new factual claims in support of his federal habeas petition. *Brown v. Estelle*, 701 F.2d 494, 495 (5th Cir. 1983).

In Louisiana the highest court is the Louisiana Supreme Court. *See* LSA–Const. art. 5, § 5(a). Thus, in order for a Louisiana prisoner to have exhausted his state court remedies he must have fairly presented the substance of his federal constitutional claims to the Louisiana Supreme Court in a procedurally correct manner, based on the same general legal theories and factual allegations that he raises in his § 2254 petition.

### 2. Procedural Default

When a petitioner's claim is dismissed by the state court based on state law grounds, and those grounds are independent of the federal question and adequate to support the judgment, he may not raise that claim in a federal habeas proceeding absent a showing of cause and prejudice or that review is necessary "to correct a fundamental miscarriage of justice." *Coleman v. Thompson*, 111 S.Ct. 2546, 2553–54, 2564 (1991) (internal quotations omitted). Procedural default exists where (1) a state court clearly and expressly bases its dismissal of the petitioner's constitutional claim on a state procedural rule and that procedural rule provides an independent and adequate ground for the dismissal ("traditional" procedural default) or (2) the petitioner fails to properly exhaust all available state court remedies and the state court to which he would be required to petition would now find the claims procedurally barred ("technical" procedural default). In either instance, the petitioner is considered to have forfeited his federal habeas claims. *Bledsue v. Johnson*, 188 F.3d 250, 254–5 (5th Cir. 1999). This is not a jurisdictional matter, but instead a doctrine "grounded in concerns of comity and federalism." *Trest v. Cain*, 118 S.Ct. 478, 480 (1997). The grounds for traditional procedural default must be based

on the actions of the last state court rendering a judgment. *Harris v. Reed*, 109 S.Ct. 1038, 1043 (1989). To serve as adequate grounds for a federally cognizable default, the state rule "must have been firmly established and regularly followed by the time as of which it is to be applied." *Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir. 2004) (internal quotations omitted).

### C. General Principles

When a state court adjudicates a petitioner's claim on the merits, this court reviews the ruling under the deferential standard of 28 U.S.C. § 2254(d). *E.g.*, *Corwin v. Johnson*, 150 F.3d 467, 471 (5th Cir. 1998). That statute provides that a writ of habeas corpus shall not be granted unless the state court's adjudication resulted in a decision that was (1) contrary to clearly established federal law or involved an unreasonable application of that law, or (2) based on an unreasonable determination of the facts in light of the evidence before the state court. 28 U.S.C. § 2254(d). Where a habeas court is faced with an unexplained decision on the merits, it "looks through" that decision to the last related state court decision that provides a relevant rationale and presumes that the unexplained decision adopts the same reasoning. The respondent may rebut the presumption by showing that the unexplained decision most likely relied on different grounds than the reasoned decision below. *Wilson v. Sellers*, 138 S.Ct. 1188 (2018). Our review, however, ultimately encompasses "only a state court's decision, and not the written opinion explaining that decision." *Maldonado v. Thaler*, 625 F.3d 229, 239 (5th Cir. 2010) (internal quotations omitted); *see also Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) ("The statute compels federal courts to review for reasonableness the state court's ultimate decision, not every jot of its reasoning.") Even if the state court issues a summary denial of the claim, "the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 131 S.Ct. 770, 784 (2011).

The first standard, whether the state court's adjudication was contrary to or involved an unreasonable application of clearly established federal law, applies to questions of law as well as mixed questions of law and fact. The petitioner must demonstrate that the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S.Ct. at 786–87. A decision is only contrary to clearly established federal law "if the state court applies a rule that contradicts the governing law set forth [by the Supreme Court], or if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a [contrary result]." *Bell v. Cone*, 125 S.Ct. 847, 851 (2005) (quotations and citations omitted). As the Court recently emphasized, "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.' . . . Nor, of course, do state-court decisions, treatises, or law review articles." *Kernan v. Cuero*, 138 S.Ct. 4, 9 (2017) (internal citation omitted).

The second standard – whether the state court's adjudication was based on an unreasonable determination of the facts in light of the evidence – applies only to questions of fact. It is insufficient for a petitioner to show that the state court erred in its factual determination. Instead, he must demonstrate that the factual determination was objectively unreasonable, a "substantially higher threshold." *Schriro v. Landrigan*, 127 S.Ct. 1933, 1939 (2007). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S.Ct. 841, 849 (2010). Instead, a presumption of correctness attaches to the state court's factual determinations and the petitioner must rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

# III.
## LEGAL ANALYSIS

### A. Timeliness

The Louisiana Supreme Court denied Thibodeaux's application for supervisory review on direct appeal on April 24, 2017.  His conviction became final on July 24, 2017, when his 90-day window for seeking review in the United States Supreme Court expired. Sup. Ct. R. 13. Accordingly, **0 days** accrued against § 2244(d)'s one-year limitations period before he filed his application for post-conviction relief in the trial court on May 1, 2017.  The limitations period was then tolled until the Louisiana Supreme Court's decision on December 3, 2018, and **4 days** accrued against the one year limit before Thibodeaux filed his federal habeas petition on December 7, 2018. Therefore only **4 days** have accrued against the one-year limit and the matter is timely.

### B. Exhaustion and Procedural Default

Finding that the application was timely, we next apply the doctrines of exhaustion of state court remedies and procedural default in order to determine whether we can proceed to the merits of the claim.

Upon our review of the appellate record, we find that he properly sought review on all issues at every level of the state court in his post-conviction proceedings. He has therefore exhausted his state court remedies.

In addressing the merits of the claim now raised in his federal habeas petition, the state court found no procedural defects and denied the claim on the merits. Therefore, we find no grounds for procedural default

### C. Merits Consideration

#### 1. Claims 1 & 2 - Ineffective Assistance of Counsel

Plaintiff makes two claims of ineffective assistance of counsel:

1. Can the trial court (14th JDC), renunciate its ministerial duty [Constitutional…], and, insidiously advertent circumvent a defendant's "constitutional" right of "assistance of counsel" for his or her defense…at every stage of adversarial proceedings (?) promugated(sic)/and, "guaranteed within the Sixth Amendment, and made incumbent by the Fourteenth Amendment – "due process clause" [?] See e.g., Powell et al v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932) (citing, Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d. 799 (1963)…)…

2. Can the trial court (14th JDC), clandestinely collaborate… with court-appointed counsel, Robert Shelton, to insidiously circumvent the defendant's [constitutional right…] … of "effective assistance of counsel"…deliberate dereliction/missions… see e.g. U.S. v. Chronic, 466 U.S. 638, 104 S.Ct. 2039, 80 L.Ed.2d. 657 (1984) (citing Jones v. Jones, 988 F.Supp. 1000 (E.D. La. 1997); quoting, Tower v. Glover, 467 U.S. 914, 919-20, 81 L.Ed.2d. 758, 104 S.Ct. 2820 (1984)…)…

The trial court, finding petitioner's two claims of ineffective assistance of counsel to be "essentially identical," [doc. 14, att. 11, p. 121], addressed them as one. This Court will proceed in the same manner.

### a. Standard

Claims of ineffective assistance of counsel are gauged by the guidelines set forth by the Supreme Court in *Strickland v. Washington*, 104 S.Ct. 2052 (1984). Under *Strickland*, a petitioner must demonstrate: (1) that his counsel's performance was deficient, requiring a showing that the errors were so serious such that he failed to function as "counsel" as guaranteed by the Sixth Amendment, and (2) that the deficiency so prejudiced the defendant that it deprived him of a fair trial. *Id.* at 2064. The first prong does not require perfect assistance by counsel; rather, petitioner must demonstrate that counsel's representation fell beneath an objective standard of reasonableness. *Id.* Judges have been cautioned towards deference in their review of attorney performance under *Strickland* claims in order to "eliminate the potential distorting effect of hindsight." *Rector v. Johnson*, 120 F.3d 551, 563 (5th Cir. 1997) (quoting *Strickland*, 104 S.Ct. at

2065) (quotations omitted). Accordingly, the court should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

The second prong requires the petitioner to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 104 S.Ct. at 2055–56. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 2056. In other words, the petitioner must show prejudice great enough to create a substantial, rather than conceivable, likelihood of a different result. *Pape v. Thaler*, 645 F.3d 281, 288 (5th Cir. 2011) (quoting *Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011)). "Both of [Strickland's] prongs must be proven, and the failure to prove one of them will defeat the claim, making it unnecessary to examine the other prong." *Williams v. Stephens*, 761 F.3d 561, 566–67 (5th Cir. 2014).

### b. Claims

Thibodeaux claims that his trial counsel was ineffective because he was allegedly "entirely absent" during the pretrial period.[1]  Doc. 1, att 2., p. 16.  The ultimate question in this appeal—whether appellant's right to counsel was constructively denied —is a mixed question of law and fact, subject to de novo review.  *United States v. Job*, 387 Fed.Appx. 445, 450 (5th Cir. 2010).   In *U.S. v Cronic*, 104 S.Ct. 2039 (1984), the Supreme Court set forth an extremely narrow exception to *Strickland*, holding that if there has been such an abdication of advocacy that the prosecution's case was not subjected to meaningful testing, a defendant need not demonstrate that he was prejudiced by counsel's actions. *Barbee v. Davis*, 728 Fed.Appx. 259, 260 (5th Cir.2018), *cert. denied*, 139 S.Ct. 566 (2018).   ~~Thibodeaux's trial attorney, Robert Shelton, was appointed in~~

---

[1] In his petition, Thibodeaux makes mention of ineffectiveness of his counsel during the trial, as well as the pre-trial phase.  However, the only claim addressed in the trial court was that of ineffective assistance of counsel during the pre-trial period.  See Doc. 14, att. 11, p. 121.  Accordingly, this Court will only address claims related to counsel's activity during the pre-trial phase.

~~August 2013. Doc. 14, att. 5, p. 88.   Mr. Shelton provided a vigorous defense at trial.  According to the trial transcript, he examined witnesses, objected to evidence, and pointed out flaws of the State's case against his client.   Notably, he called the DNA Technical Leader at the Southwest Louisiana Crime Lab as a witness and, through her testimony, proved that the knife that was found in the car in which petitioner was a passenger had no DNA on it, nor was petitioner's DNA found on any of the items tested, but rather, the DNA belonged to an unidentified man.   Doc. 14, att. 7, p. 74.~~ The Fifth Circuit Court of Appeals has held that a "defense counsel must entirely fail to subject the prosecution's case to meaningful adversarial testing for the *Cronic* exception to apply." *Haynes v. Cain*, 298 F.3d 375, 381–82 (5th Cir. 2002) (en banc) (*citing Gochicoa v. Johnson*, 238 F.3d 278, 285 (5th Cir. 2000).

Thibodeaux is not entitled to relief under *Strickland*.  First, he asserts that he received ineffective assistance of counsel because his attorney failed to consult with him during the pretrial stages.  Assuming arguendo that what the petitioner states regarding his meeting with Mr. Shelton is true, "failure to consult and obtain consent in and of itself does not render [counsel's] strategic decision presumptively prejudicial." *Barbee v. Davis*, 728 Fed.Appx. 259, 267 fn5 (5th Cir.2018), *citing United States v. Thomas*, 417 F.3d 1053, 1059 (9th Cir. 2005).  Moreover, petitioner fails to detail what would have come from more consultation and/or how he was prejudiced by an alleged failure to consult.

Thibodeaux also claims that he received ineffective assistance of counsel because his attorney failed to file pretrial motions.  First, that is technically not true, as Mr. Shelton did file a Motion for Discovery and Inspection, and a Motion for Bill of Particulars.  Doc. 14, att. 5, pp. 82-87.  While the petitioner does not denote what pretrial motions his attorney should have filed, the State surmises, and this Court agrees, that he seems to be referring to the motions that he filed pro

se, i.e. a motion to quash and a motion to suppress.  These motions were not adopted by his trial counsel and later found to be without merit by the trial court.  Doc. 14, att. 10, pp. 80-149.  The trial court's ruling was were affirmed by the Third Circuit. *Thibodeaux*, 190 So.3d at 435-440.

Defense counsel is not required to file frivolous, unnecessary motions. *United States v. Preston,* 209 F.3d 783, 785 (5th Cir. 2000). *See also Clark v. Thaler*, 673 F.3d 410, 429 (5th Cir.2012) ("failure to assert a meritless objection cannot be grounds for a finding of deficient performance"); *Wood v. Quarterman*, 503 F.3d 408, 413 (5th Cir. 2007) (" '[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite' ") (*quoting Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994)); *Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998) (failure to make a frivolous objection is not deficient performance below an objective level of reasonableness).  Moreover, the decision to file or not to file pretrial motions is within the realm of trial strategy. *Schwander v. Blackburn*, 750 F.2d 494, 500 (5th Cir. 1985). Trial tactics and strategy do not form the basis for federal habeas corpus relief unless it is so unreasonable that it taints the entire trial with obvious unfairness. *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983). This petitioner has failed to show deficient performance or prejudice and, as such, he is not entitled to relief on this claim.

~~Thibodeaux also claims that he received ineffective assistance during the trial because his attorney did not request the blood alcohol content of one of the victims.[2]  Even if a blood sample existed and was capable of being tested, the petitioner does not state how or under what authority his attorney would have done this. Further, the petitioner cannot show prejudice. The petitioner is essentially arguing that he could have attacked the credibility of victim Joseph Newman if he had had Joseph's blood alcohol level at the time of his identification.  However, Joseph testified that~~

---

[2] The State notes that there is no indication that blood samples were taken and, if they were, whether they were preserved and available for later testing.

~~he and the other victims—but not the petitioner—had been drinking and doing drugs the night of the murders. The State argues, and this court agrees, that Joseph's possible impairment would go to his credibility and the weight of the evidence and, since crack cocaine is illegal, and there is no legal limit for crack cocaine, impairment could not have been substantiated. Thus, the actual test results would have no more effect than the admission by Joseph Newman himself.~~

~~Finally, the petitioner asserts that he received ineffective assistance of counsel because his trial counsel failed to object to "impermissible hearsay" and perjured testimony by all the State's witnesses. Doc. 1-2, p. 9. The petitioner makes merely conclusory allegations and fails to show what statement he is referring to or how he was prejudiced by it. He is entitled to no relief.~~

In conclusion, the petitioner has not shown any deficient performance or prejudice. The state court's ruling finding that the petitioner did not receive ineffective assistance of counsel was not "contrary to" the governing law set forth by the Supreme Court for ineffective assistance of counsel cases in this case. Thibodeaux has not shown that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 131 S.Ct. 770, 786-87 (2011). Therefore, applying the deferential standard of review imposed by AEDPA, the state habeas court did not unreasonably apply *Cronic* or *Strickland* and habeas relief is not warranted.

## 2. Claims 3 & 5 – Trial Court Erred in Admitting Certain Items

In these claims, Thibodeaux appears to complain that the trial court erred in allowing certain items, including a knife, wig, sweatshirt and cellphone, to be admitted at trial.

"Federal habeas corpus review is limited to errors of constitutional dimension, and federal courts do not sit to review the mere admissibility of evidence under state law." *Castillo v. Johnson*, 141 F.3d 218, 222 (5th Cir. 1998) *citing Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir. 1992),

*cert. denied*, 113 S. Ct. 2977 (1993).  "According to the Supreme Court, the admission of evidence may violate the Due Process Clause of the Fourteenth Amendment if the evidence is 'so unduly prejudicial that it renders the trial fundamentally unfair.' " *Wood v. Quarterman*, 503 F.3d 408, 414 (5th Cir.2007) *citing Payne v. Tennessee*, 111 S.Ct. 2597 (1991) (citations omitted). Admission of prejudicial evidence is fundamentally unfair so as to justify federal habeas corpus relief only if it "played a crucial, critical, and highly significant role in the trial." *Gonzales v. Thaler*, 643 F.3d 425, 430 (5th Cir. 2011) (quotation omitted). And even if the admission of the evidence was constitutional error, the petitioner must still prove that the evidence had a 'substantial and injurious effect or influence in determining the jury's [ ] verdict.'" *Wood*, 503 F.3d at 414 *citing Janecka v. Cockrell,* 301 F.3d 316, 328–29 (5th Cir.2002) (*quoting Brecht v. Abrahamson*, 113 S.Ct. 1710 (1993)).

Thibodeaux makes conclusory the allegation that the knife and wig were not relevant or related to the crime and the sweatshirt and the cell phone were impermissible hearsay and that all these items were admitted to his prejudice. Yet, he fails to show that any and or all of the evidence of which he complains meets the standard discussed in *Wood*, i.e. "substantial and injurious effect or influence in determining the jury's verdict."  While the knife, wig, hooded sweatshirt and cell phone number were used in the State's case, these items were not the bases of what convicted this petitioner.  As the State notes, petitioner was the only uninjured person in an attack that killed two and seriously hurt another. He was identified by the sole survivor as the perpetrator in open court. This claim has no merit.

### 3.  Claim 4 – Authenticity and Validity of Indictment

Next, Thibodeaux challenges the authenticity and validity of the indictment because it failed to allege essential elements of material fact.  He is not entitled to relief on this claim, as "it

is settled in this Circuit that the sufficiency of a state indictment is not a matter for federal habeas corpus relief unless it can be shown that the indictment is so defective that the convicting court had no jurisdiction." *Evans v. Cain*, 577 F.3d 620, 624 (5th Cir.2009) citing *Branch v. Estelle*, 631 F.2d 1229, 1233 (5th Cir. Unit A 1980); see also *McKay v. Collins*, 12 F.3d 66, 68 (5th Cir.1994). A question of the state court's jurisdiction is a basis for federal habeas corpus relief only under the Due Process Clause. *Id.* (citing *Lowery v. Estelle,* 696 F.2d 333, 337 (5th Cir.1983)).

However, a jurisdictional defect claim is foreclosed from federal habeas review when it has been "squarely presented to the highest court of the state on appeal, and that court held that the trial court had jurisdiction over the case." *Id.* (citations omitted). "An issue may be squarely presented to and decided by the state's highest court when the petitioner presents the argument in his application for postconviction relief and the state's highest court denies that application without written order." *Id.* at 624 (citations omitted).

In this matter, the petitioner complained that the bill was insufficient on appeal and on post-conviction. Doc. 14, att. 3, pp. 53, 293, 372. The Third Circuit, on direct appeal, held that the indictment in this case was valid. *Thibodeaux*, 190 So.3d at 439. The Louisiana Supreme Court on both direct appeal and on post-conviction, denied relief. If the highest state court has found the bill of information sufficient and jurisdiction proper under state law, a federal court does not readdress the issue. *Evans*, 577 F.3d at 624. Thus, this petitioner is not entitled to review of his claims by or relief from this federal habeas court.

### 4. Claim 6 – Trial Court Failed to Suppress Photographic Lineup

Thibodeaux claims that it was "impermissibly suggestive" for law enforcement to use a photographic lineup with Joseph Newman who was under the influence of drugs at the time and could not have made a valid identification. "The identification of a defendant in a manner that

suggests whom the witness should identify is a denial of the defendant's right to due process of law." *Dispensa v. Lynaugh*, 847 F.2d 211, 218 (5th Cir.1988). "[D]ue process concerns arise only when law enforcement officers use[] an identification procedure that is both suggestive and unnecessary." *Sexton v. Beaudreaux*, 138 S.Ct. 2555, 2559 (2018) citing *Perry v. New Hampshire*, 132 S.Ct. 716 (2012) (citing *Manson v. Brathwaite*, 97 S.Ct. 2243 (1977), and *Neil v. Biggers*, 93 S.Ct. 375 (1972). "To be 'impermissibly suggestive,' the procedure must 'give rise to a very substantial likelihood of irreparable misidentification." *Sexton*, 138 S.Ct. at 2559 citing *Neil v. Biggers*, 93 S.Ct. 375 (1972) (quoting *Simmons v. United States*, 88 S.Ct. 967 (1968)). "Even when an unnecessarily suggestive procedure was used, 'suppression of the resulting identification is not the inevitable consequence.'" *Id.,* citing *Perry*, 132 S.Ct. 716.

The Third Circuit held, when addressing the motion to suppress Mr. Newman's identification, that Thibodeaux's argument related to the identification went to the weight and credibility of the evidence, not the constitutionality under the Fourth Amendment. *Thibodeaux*, 190 So.3d at 438-39. The State notes, and this Court agrees, that Thibodeaux can point to nothing that law enforcement did or did not do that influenced Mr. Newman's selection of him on the photographic lineup. As such, this claim has no merit.

### 5. Claims 7 & 8 – Insufficient Evidence

Plaintiff makes two claims related to the insufficiency of the evidence:

7. Was there evidentiary sufficiency…to the trial court (14th JDC) finding of guilty as charged, LSA-R.S. 14:30.1, two(2) counts, absent, any direct nexus of evidence/eye-witness? In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 369 (U.S.N.Y. 1970)(citing Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)…)…

8. Was there evidentiary sufficiency to the trial court (14th JDC), finding guilty as charged, LSA-R.S. 14:27/30.1, one(1) count, absent, any direct evidence…nexus to the defendant, and in light of the record…merely establishes a use of force/or violence as required for a battery, LSA-R.S. 14.34, absent, the showing of intent to cause death. Id.

In these claims, the petitioner alleges that there was not sufficient evidence to convict him of the two counts of second-degree murder and one count of attempted second degree murder.

### a. Standard

*Jackson v. Virginia*, 99 S. Ct. 2781 (1979), provides the appropriate United States Supreme Court standard for consideration of a claim of insufficient evidence.   Under *Jackson*, a federal habeas court addressing an insufficiency of the evidence claim must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.  *Id.* at 319; *Williams v. Cain*, 408 F. App'x 817, 821 (5th Cir. 2011); *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008).  Thus, to determine whether the commission of a crime is adequately supported by the record, the Court must review the substantive elements of the crime as defined by state law. *Perez*, 529 F.3d at 594 (citing *Jackson*, 443 U. S. at 324 n. 16).

In *Young v. Guste*, 849 F.2d 970 (1988), the Fifth Circuit noted that a federal habeas court's sufficiency of the evidence analysis is restricted to "review of the record evidence adduced at trial." *Young*, 849 F.2d at 972.  In *Coleman v. Johnson,* 132 S.Ct. 2060 (2012), the United States Supreme Court elaborated on claims made under *Jackson v. Virginia*:

> We have made clear that Jackson claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, 'it is the responsibility of the jury—not the court— to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.' *Cavazos v. Smith*, 132 S.Ct. 2, 4 (2011) (per curiam). And second, on habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'' *Ibid.* (quoting *Renico v. Lett*, 130 S.Ct. 1855, 1862, (2010)).

132 S.Ct. at 2062.  Thus, the standard to be applied by this Court when conducting a sufficiency of evidence analysis on federal habeas review is in fact "twice-deferential."  *Parker v. Matthews*, 132 S.Ct. 2148, 2152 (2012).

The sufficiency of the evidence analysis employed by Louisiana courts is the same one used by federal courts, *Jackson v. Virginia, supra*. *State v. Bishop*, 835 So.2d 434, 437 (La. 2003). Louisiana's Third Circuit Court of Appeal set forth the proper state and federal court analysis of a sufficiency of the evidence claim in *State v. Lambert*, 720 So.2d 724 (La. App. 3 Cir. 1998) where it stated:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witness. Therefore, the appellate court should not second-guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See King*, 436 So.2d 559, citing *State v. Richardson*, 425 So.2d 1228 (La.1983).

720 So.2d at 726-27

Where a federal habeas petition claims that the state court trial evidence is insufficient for a conviction, the "proper standard of review is whether any rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *Bujol v. Cain*, 713 F.2d 112, 114 (5th Cir. 1983), citing *Jackson*.  "The *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'" *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) citing *Herrera v. Collins*, 113 S. Ct. 853, 861 (1993).  The federal habeas court must evaluate a sufficiency of the evidence challenge "with explicit reference" to the substantive state

law elements of the criminal offense and should "give great weight to the state court's determination." *Foy v. Donnelly,* 959 F.2d 1307, 1313-14 (5th Cir. 1992), quoting *Jackson v. Virginia*, 443 U.S. at 323 n. 16; *Gibson v. Collins*, 947 F.2d 780, 782, 786 (5th Cir. 1991); *Poretto v. Stalder,* 834 F.2d 461, 467 (5th Cir. 1987).f

### b. Claims

#### 1. Second Degree Murders of Bridget Pryor and Carla LeDoux

On federal habeas review, the substantive state law "defines the elements of the crime that must be proved." *Bujol*, 713 F.2d at 115. In pertinent part, LSA-R.S. 14:30.1 defines second degree murder as the killing a human being "[w]hen the offender has a specific intent to kill or to inflict great bodily harm." LSA-R.S. 14:10(1) states: "Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act."

The trial testimony regarding the incident revealed the following: Joseph Newman and Bridget Pryor had been dating off and on for approximately five years. Doc. 14, att. 6, pp. 127-28. On January 3, 2012, Joseph came to Bridget's house and he and Bridget, along with Equilla Denise LeDoux ("Denise"), Jesse Zeno, Bridget Pryor, Carla LeDoux, were socializing. *Id*. Everyone but Joseph and Bridget left the home at approximately 3:00 to 4:00 a.m.. *Id*. at 188. Between an hour to an hour-and-a-half later, Carla and Thibodeaux returned to Bridget's home and eventually wound up in Bridget's bedroom. *Id*. at 138. Joseph and Bridget were still in the front room when Bridget heard arguing. Carla and Thibodeaux came out the room and then went back in, and then returned back to the room where they began arguing again. *Id*. at 139. After the third time hearing them argue, Bridget went to the bedroom to quiet the couple. *Id*. at 140. Joseph testified that when Bridget got to the bedroom door, he heard "a little scuffle," "a commotion." *Id*.

When he heard Bridget say "was you gonna fight me in my own house," Joseph went and pushed the bedroom door open. *Id*. The room was pitch black, so dark that Joseph could not see that Thibodeaux attacked him. *Id*. Joseph testified that he initially did not know that he was being stabbed but, on Thibodeaux's third blow, Joseph saw something shiny. Joseph grabbed his arm and they started fighting. *Id*. at 141. Joseph was able to get "a hold" of Thibodeaux's hands when he tripped over a table and fell backwards. *Id*. at 142. As Joseph was still on the floor, Thibodeaux tried to stab Joseph in his chest. *Id*. Bridget came out of the room and was standing at the front door; Joseph asked her to help him or to get someone to help him, but Bridget left out of the front door. *Id*. at 143. Joseph's struggle with Thibodeaux continued until Joseph was able to poke him in his eye with his thumb. *Id*. at 147. Thibodeaux finally left the house and Joseph, after regaining his composure, went outside to find Bridget. *Id*. at 144. Joseph walked to the end of the street, "hollering Bridget, Bridget," but was unable to find her. *Id*. He returned to the home and went into the bedroom and found Carla unresponsive and bleeding around the side of her neck. *Id*. at 146. Bridget's body was found in front of her neighbor's home and Carla's body was discovered when the police searched Bridget's home. *Id*. at 212; doc. 14, att. 5, p. 238. Joseph was located at his home with injuries so severe that he is now disabled. Doc. 14, att. 6, p. 126.

The Louisiana Third Circuit conducted a review of the evidence presented at trial and determined that "accepting Mr. Newman's testimony as credible, the trier of fact could conclude that the state established beyond a reasonable doubt that the defendant was at the scene of the offenses when they occurred, that he was in the room when both Ms. Pryor and Ms. LeDoux were repeatedly stabbed, and that he left that room with the bloody knife in his hand. Additionally, Mr. Newman testified to seeing Ms. Pryor leave the house, and that the defendant followed her out the

front door of the house. The defendant points to nothing in the record that contradicts Mr. Newman's testimony at trial." *Thibodeaux*, 190 So.2d at 426.

Thibodeaux complains that his convictions rest solely on the testimony of the surviving victim, Joseph Newman. Doc. 1, att. 2, p. 21-23.  However, this reliance on witness testimony is permissible under both federal and Louisiana law, which sets forth that the testimony of a single eyewitness is generally sufficient to support a conviction. *See United States v. King,* 703 F.2d 119, 125 (5th Cir.1983); *Adkins v. Warden, Louisiana State Penitentiary*, 09-CV-0898, 2012 WL 3645071, at *4 (W.D. La. July 19, 2012), report and recommendation adopted, 09- CV-0898, 2012 WL 3645057 (W.D. La. Aug. 23, 2012); *State v. George*, 2009-143 (La.App. 3 Cir. 10/7/09), 19 So.3d 614, 618.

When a petitioner essentially complains about credibility in making his sufficiency argument, a federal habeas court should defer to the state court factual findings.  *Jackson v. Miss. Dep't of Corr.*, 359 Fed.Appx. 499 (5th Cir. 2010) (citing *Knox v. Butler*, 884 F.2d 849, 851 (5th Cir. 1989)). The *Knox* Court stated that a federal habeas court "must respect the ability of the fact-finder to evaluate the credibility of witnesses." *Knox*, 884 F.2d at 851. In *Pemberton v. Collins*, 991 F.2d 1218, 1225 (5th Cir. 1993), the Fifth Circuit noted that federal habeas law "obliges federal judges to respect the credibility determinations made by the trier of fact." In fact, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume -- even if it does not affirmatively appear in the record -- that the trier of fact resolved any such conflicts in favor of the prosecution and must defer to that resolution." *Jackson*, 443 U.S. at 326. The petitioner has presented nothing that contradicts Joseph's testimony. The jury and the trial court properly accepted the testimony of the victim, which is allowed under the law.

### 2. Attempted Second Degree Murder of Joseph Newman

The petitioner also claims that the evidence fails to support a finding of guilt of attempted second degree murder of Joseph Newman. This argument fails as well.

In order to convict a defendant of attempted second degree murder, the State must establish that the defendant: "(1) intended to kill the victim; and (2) committed an overt act tending toward the accomplishment of the victim's death." *State v. Roberts*, 947 So.2d 208, 213 (La. App. 3 Cir. 2007). In addition, attempted second degree murder requires that specific intent to kill be proven. *Id*.; *State v. George*, 19 So.3d 614, 619 (La. App. 3 Cir. 2009). The Louisiana Supreme Court noted in *State v. Smith*, 661 So.2d 442 (La. 1995):

> In determining whether the action of a defendant is an attempt, the totality of the facts and circumstances presented by each case must be evaluated. *State v. Williams*, 490 So. 2d 255, 261 (La. 1986). The overt act need not be the ultimate step toward or the last possible act in the consummation of the crime attempted. Id. It is the intent to commit the crime, not the possibility of success, that determines whether the act or omission constitutes the crime of attempt. *State v. Pappas*, 446 So.2d 523, 524 (La. App. 4th Cir. 1984).

661 So.2d at 444.

The petitioner claims that, other than Joseph Newman's testimony, there is no evidence that the petitioner intended to kill Joseph. The State has already established the fact finder can rely wholly or in part on the testimony of one witness under both state and federal law. *See King, Adkins, and George supra*. Thus Joseph Newman's testimony is sufficient to establish his specific intent to kill. By the time the petitioner had attacked Joseph Newman he had already killed Carla and Bridget. The petitioner then repeatedly stabbed Joseph in various areas of his body and a reasonable jury could conclude that he would have stabbed Joseph in the chest if Joseph had not been able to stop him. Joseph testified that his tendons and ligaments were cut so bad that he may not be able to use either of his arms for the rest of his life. Doc. 14, att. 6, p. 159.

Joseph's friend Marvin Ettienne testified at trial that, when Joseph came to his home after the attack, Joseph's earlobe was hanging off his head. *Id*. at 198. Joseph testified that the ambulance driver told him that he could have bled to death. *Id*. at 158. Sergeant Franklin Fondel of the Lake Charles Police Department testified that when he interviewed Joseph in the hospital, he had large lacerations to the forearm of both his arms, a puncture wound on his neck, in addition to stabs and cuts over his body. *Id*. at 12. The State argues, and the Court agrees, that considering the severity of Joseph's injuries, it is clear that the petitioner had specific intent to kill Joseph.

Finally, under Louisiana law, "[f]light and attempt to avoid apprehension indicates consciousness of guilt, and therefore, is one of the circumstances from which a juror may infer guilt." *State v. Fuller*, 418 So.2d 591, 593 (La. 1982). Thibodeaux's mother and sister lied to the police regarding his whereabouts and had planned to use the petitioner's nephew, Jason Thibodeaux, as a getaway driver to Houston, Texas. Jason testified that his grandmother instructed him to back her car into her garage. Doc. 14, att. 6, pp. 223-224. Approximately ten minutes later, the petitioner got into the backseat of the car behind Jason. *Id*. at 224. Jason drove as instructed and the car was stopped by law enforcement before they could get on the interstate. Jason testified that when arrested the petitioner had shaved off his trademark mustache and was wearing a wig. *Id*. at 231.

A reasonable jury could conclude based on the evidence adduced that the petitioner's attempt to avoid prosecution, in conjunction with the facts surrounding the murders, constitutes an indication of guilt. Accordingly, applying the *Jackson*, viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to find petitioner guilty of two counts of second degree murder and attempted second degree murder. As long as a petitioner has been afforded due process of law, as this petitioner has been, then the fact finder's determinations must

remain undisturbed by the appellate courts.  The record contains ample evidence to support the

jury's verdicts and the court finds that the evidence presented at trial was more than sufficient to

permit the petitioner's convictions. He is not entitled to relief.

### 9. Claims 9 & 10 – Trial Court Erred in Not Providing Petitioner with Grand Jury Testimonies of State Witnesses

Finally, the petitioner complains that the trial court erred when he was not provided the

testimony of the State's witnesses before the grand jury.[3]  Claims 9 and 10 are as follows:

> 9. Was it a substantive [constitutional…] unreasonable application of…and, contrary to…established [U.S. Sup.Ct.]…precedents, allowing impermissible out-of-court statements and [knowingly] impermissible incitement of perjurious testimonies of state's witnesses (Det. Fondel, Denise Ledoux, Jason Thibodeaux), vilative (sic) of the "confrontation clause" and "due process clause" – of prosecutorial misconduct(?) See e.g., Berger v. United States, 295 U.S. 78, 88, 79 L.Ed. 1314, 55 S.Ct. 629 (1935) (citing, Napue v. People of the State of Illinois, 360 U.S. 264, 3 L.Ed.2d 1217, 79 S.Ct. 1173 (1959); Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d. 177 (U.S. Wash. 2004)…)…

> 10. Did the trial court (14th JDC), substantive (constitutional…) failure to accord and comply with established (federal) jurisprudence and precedents, pursuant to upon request- - pro se motion for supplemental discovery, LSA-C.Cr.P.Arts. 716-718; e.g., exhibit "EE'" copies of testimonies of state's witnesses before the grand jury, and, criminal histories of state's witnesses… the materiality of imopeachment (sic), interests, and, bias, in the case mater, violative of the "Brady Rule" and "Due Process Clause" ? See e.g., Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d. 215 (1963); Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d. 104 (1972); United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 155, 131 L.Ed.2d. 490 (1985)…)…

Petitioner's claim that he is entitled to grand jury testimony is without merit, as La. Const.

Art. 5, § 34(A) mandates that the secrecy of grand jury proceedings be provided by law. Louisiana

grand jury secrecy laws expressly allow for the disclosure of state grand jury materials in the

---

[3] While petitioner mentions the criminal histories of the State's witnesses in the heading of this claim, he does not present argument regarding same; only grand jury testimony is discussed.  The fact that no argument was presented as to this claim, coupled with the fact that the trial court did not address it in ruling on petitioner's application for post-conviction relief, this Court will not address a claim that trial court erred in not providing the criminal histories of the State's witnesses.

situations provided in LSA-C.Cr.P. art. 434. Outside of those situations, a party seeking disclosure of state grand jury materials must show a compelling necessity for the materials. *In re Grand Jury*, 98-2277 (La. 4/13/99), 737 So.2d 1, 5-9; *State v. Trosclair*, 443 So.2d 1098, 1102-03 (La. 1983), *cert. dismissed*, 104 S. Ct. 3593 (1984).

The disclosures expressly permitted by LSA-C.Cr.P. art. 434 include: (1) after the indictment, members of the grand jury and other persons present may reveal (to defense counsel, the attorney general, the district attorney, or the court), and testify concerning, "statutory irregularities" in grand jury proceedings; (2) a court may permit disclosure of testimony given before the grand jury to show that a witness committed perjury in his testimony before the grand jury; (3) a witness may discuss his testimony with the court, attorney general, district attorney, or counsel for the person under investigation or indicted; and (4) after notification to his district attorney, the foreman of a grand jury that discovers a crime may have been committed in another parish shall make that discovery known to the attorney general, and the district attorney or attorney general may direct any relevant evidence and testimony to the district attorney of another parish. *State v. Ross*, 13-0175 (La. 2014), 144 So.3d 932, 938.  In addition, the statutory rule of secrecy of grand jury testimony must yield to constitutional rights. *See State v. Peters*, 406 So.2d at 189 (La. 1981).

Thibodeaux fails to show why he needed the transcript of the witnesses' testimony. He states his need in general and vague terms: "for the materiality of impeachment, interest and bias in the case matter;" "constitutional right to assess/access exculpatory evidence," "constitutional right to present an effective complete defense to confrontation, cross examination of state's witnesses as to interest/bias and perjury."  Doc 1, att. 2, pp. 24-30. But the petitioner has not identified with any clarity what misconduct or allegedly false and misleading information he seeks

to disclose or confirm from these documents. Federal courts do not "consider a habeas petitioner's bald assertions on a critical issue in his pro se petition . . . mere conclusory allegations do not raise a constitutional issue in a habeas proceeding." *Smallwood v. Johnson*, 73 F.3d 1343, 1351 (5th Cir. 1996) (quoting *Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983)).   Conclusory claims are insufficient to entitle a habeas corpus petitioner to relief. *United States v. Woods*, 870 F.2d 285, 288 (5th Cir. 1989); *Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982). The state courts' denial of relief was not contrary to or an unreasonable application of Supreme Court law. The petitioner is not entitled to relief on this claim.

## IV.
### CONCLUSION

Based on the foregoing, **IT IS RECOMMENDED** that the instant petition be **DENIED** and **DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429–30 (5th Cir.  1996).

In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate

of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. *See* 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE AND SIGNED in Chambers this 11th day of December, 2019.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE